UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN RICHARD SNOWDEN,

      Plaintiff,

v.

Case No. 1:12-cv-1091
Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).[1]

Plaintiff was born on February 9, 1959 (AR 146, 184).[2] He alleged a disability onset date of February 9, 2003 (AR 146, 184). Plaintiff graduated from high school, attended about two years of college and had additional vocational training in working with sheet metal (AR 49-50, 182). He had previous employment as a salesman, floor layer and factory worker (AR 52-54, 177). Plaintiff identified his disabling conditions as depression, multiple sclerosis and restrictive breathing disease (AR 176). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 25, 2011 (AR 29-37). This decision,

---

[1] The Court notes that plaintiff was found disabled for purposes of Supplemental Security Income (SSI) in September 2008, approximately nine months after his last insured date for DIB (AR 33).

[2] Citations to the administrative record will be referenced as (AR "page #").

which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 9,

2003 through his date last insured of December 31, 2007 (AR 31). Second, the ALJ found that through the date last insured, plaintiff had the severe impairment of multiple sclerosis (AR 31). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 33). Specifically, plaintiff did not meet the requirements of Listings 2.02 (loss of visual acuity), 2.03 (contraction of the visual field in the better eye), 2.04 (loss of visual efficiency), 11.04 (central nervous system vascular accident), 11.09 (multiple sclerosis), or 12.02 (organic mental disorders) (AR 33).

The ALJ decided at the fourth step that through the date last insured:

> [T]he claimant had the residual functional capacity to perform work limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently. He could sit for up to 6 hours and stand or walk, in combination, for up to 6 hours in an 8-hour workday. He was further limited to only occasional use of his hands for handling, fingering or feeling.

(AR 34). The ALJ also found that through the date last insured, plaintiff was unable to perform any of his past relevant work (AR 35).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the regional economy (defined as the lower peninsula of Michigan) (AR 36). Specifically, plaintiff could perform the following jobs in the regional economy: production inspector (2,000 jobs); small/retail cashier (5,000 jobs); parking lot cashier (1,500 jobs); and host/greeter (1,500 jobs) (AR 37). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from February 9, 2003 (the alleged onset date) through December 31, 2007 (the date last insured) (AR 37).

4

### III. ANALYSIS

Plaintiff raised four issues on appeal:

**A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physicians and by blatantly misconstruing the evidence to find that plaintiff's multiple sclerosis was not disabling before his date last insured.**

Plaintiff contends that the ALJ failed to properly consider the opinions of Diljit Karayil, M.D. (plaintiff's primary care physician) and Herman Sullivan, M.D., (plaintiff's neurologist), and that the ALJ misconstrued the evidence to find that plaintiff's multiple sclerosis (sometimes referred to as "MS") was not disabling prior to his date last insured of December 31, 2007.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ found that none of his treating physicians had issued an opinion regarding his physical limitations:

> As for the opinion evidence, there is no opinion from a treating doctor regarding the claimant's physical status. The State consultative evaluator concluded there was not enough evidence about the claimant's physical health prior to the date last insured to make a finding of functional limitations (Exhibit 10F). Therefore, there is no opinion evidence to consider. The residual functional capacity prior to the date last insured is based on the available medical evidence of treatment during that period, as well as the later evidence that indicates good physical function prior

6

to the date last insured, with some tremors in the hands and a need to limit activities
in general in light of some indication of mildly or intermittently decreased energy.

(AR 35).

The state consultative evaluator referred to by the ALJ was the non-examining DDS physician, Shahida Mohiuddin, M.D., who prepared a physical RFC assessment dated April 29, 2009 (AR 388). At that time, Dr. Mohuiddin found that plaintiff had been recently diagnosed with multiple sclerosis and COPD, and that his statements of difficulty in many physical abilities were fully credible (AR 385). However, Dr. Mohuiddin indicated that there was insufficient medical evidence of record from the alleged onset date of February 2003 to the date last insured of December 31, 2007 to support plaintiff's claim (AR 388).

Plaintiff's treatment with Dr. Karayil commenced in June 11, 2008 (six months after the date last insured) (AR 330). In an MRI taken on August 26, 2008, the radiologist found "extensive white matter disease," with multiple sclerosis suspected (AR 296). Based on these findings, the radiologist recommended clinical correlation (AR 296). In a "Final Report" dated January 25, 2011 and addressed to the ALJ, Dr. Sullivan stated that he first saw plaintiff in August 2008 and expressed the following opinions:

> I am writing in regards to Mr. John Snowden who is a patient of mine in the Multiple Sclerosis Clinic at the Hauenstein Center at Saint Mary's Health Care. Mr. Snowden is being followed for relapse-remitting multiple sclerosis with secondary progression. Mr. Snowden was first evaluated by me in 08/2008 when he presented at that time with a chief complaint of progressive discoordination, instability and gait ataxia. *He had been suffering from these symptoms for several years. The evaluation that was performed as an outpatient included neuroimaging, which confirmed the presence of demyelinating lesions consistent with multiple sclerosis. Based on the patient's clinical history and what we know about the development of demyelinating plaques and MS, this had been present for a number of years.*
>
> Mr. Snowden continues to be affected by this neurological disease. He has been on disease-modifying agents in the past. However, some of the neurological

> disability that has ensued as a consequence of the inflammatory abnormalities in the brain have resulted in persistence of neurological deficits. In my opinion, Mr. Snowden's ataxia, gait instability, dysarthria and ocular motor changes are irreversible at this point in time. He has speech difficulties and some element of discognition due to the disconnecting effect of these lesions. Mr. Snowden would not perform well being fully employed.

(AR 266) (emphasis added). This opinion was received at the Grand Rapids Office of Disability Adjudication & Review on January 31, 2011 (AR 266). However, it was not included as an exhibit at the hearing.

Based on this record, it appears that Dr. Sullivan's report was an opinion from a treating physician which supports plaintiff's claim that he suffered from MS "years" before his last insured date of December 31, 2007. The existence of Dr. Sullivan's report contradicts the ALJ's finding that "there is no opinion from a treating doctor regarding the claimant's physical status" (AR 35). *See, e.g.*, *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989) (where the claimant suffered from a progressive psychiatric disorder which developed over a number of years since suffering an injury in 1979, and the ALJ found that he was disabled as of November 13, 1985, common sense suggests that the claimant "did not suddenly find himself, five months after the expiration of his coverage [on June 30, 1985], completely incapacitated by his schizophreniform disorder" and that such a conclusion ignores the slowly progressive nature of the claimant's particular mental impairment).

Whether this opinion was misfiled or otherwise unavailable to the ALJ, it appears that the ALJ did not have an opportunity to review it prior to the hearing. Defendant's brief argues that Dr. Sullivan's opinion should have been obtained prior to the hearing and refers to the doctor's June 9, 2011 transcribed statement (AR 479-506) which was sent to the ALJ months after the decision

denying benefits.[3] *See* Defendant's Brief at pp. 5-8. However, defendant does not address the fact that the agency received the January 25, 2011 opinion one week before the hearing held on February 7, 2011 (AR 42).

Finally, the ALJ found that through the date last insured, plaintiff suffered from the severe impairment of multiple sclerosis (AR 31). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In determining that plaintiff had this severe impairment, the ALJ acknowledged the likelihood that plaintiff suffered from this condition before his date last insured:

> The claimant was diagnosed with multiple sclerosis, confirmed by a CT scan and MRI of the brain, in the summer of 2008 (Exhibits 2F; 3F; 5F, page 19). *Although this is after his date last insured of December 31, 2007, it is likely that he had the condition prior to that time*. Testimony from the witnesses at the hearing support some physical symptoms consistent with this diagnosis, potentially going back to the claimant's childhood.

(AR 31) (emphasis added).

While the ALJ found it likely that plaintiff suffered from multiple sclerosis prior to December 31, 2007, he had no medical opinion evidence on this issue. Dr. Sullivan's January 25, 2011 report, though brief, is medical opinion evidence that plaintiff had been suffering from the symptoms of progressive discoordination, instability and gait ataxia "for several years" before August 2008, and that plaintiff had demyelinating lesions consistent with multiple sclerosis "for a

---

[3] Plaintiff's sister acted as his representative at the administrative hearing (AR 45). While plaintiff suggests that this matter should be remanded due the "inadequate representation" of his sister, this claim was not included in the statement of errors and not fully developed in the briefs. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the Court considers this argument waived.

9

number of years" before August 2008.  This opinion evidence, which had been filed with the agency but was not available for the ALJ's review, would have been useful to the ALJ in evaluating both the diagnosis of multiple sclerosis and plaintiff's credibility with respect to the limitations posed by this condition.  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, Dr. Sullivan's January 25, 2011 report should be evaluated to determine if plaintiff suffered from multiple sclerosis prior to his date last insured of December 31, 2007 and the extent of his symptoms at that time.

> **B.  The ALJ committed reversible error by failing to consider plaintiff's depression as a serious impairment.**

Plaintiff contends that the ALJ erred because he did not include plaintiff's depression as a severe impairment (AR 32).  Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation.  *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).  Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error.  *Id.*  An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity.  *Id.*  Here, the ALJ found that plaintiff suffered from the severe impairment of multiple sclerosis (AR 31), and proceeded through the remaining steps of the sequential evaluation considering plaintiff's medical record.  Accordingly, plaintiff's claim of error will be denied.

> **C.  The ALJ committed reversible error by failing to properly consider the lay witness testimony.**

Plaintiff contends that the ALJ did not properly consider the testimony of Rev. Meredith, a retired pastor and psychologist who had known plaintiff for 12 or 13 years.  Plaintiff's

Brief at pp. 12-13. Rev. Meredith testified that he had experience with people suffering from multiple sclerosis in his former parishes and that plaintiff exhibited symptoms of the condition sometime after 2003, by dropping items like a cigarette, telephone, cups, glasses, etc. (AR 76-81). The ALJ addressed the testimony of Rev. Meredith, and another lay witness, as follows:

> The brother of the claimant, Robert Snowden, and the claimant's friend, Thurlan Meredith, testified at the hearing. They both indicated the claimant had mental and physical limitations prior to the date last insured. However, Mr. Snowden indicated the claimant had such problems going back to when he was a young adult, just out of high school. Again, the claimant worked without limitation for years after that point, so this testimony only suggests the MS may have been present at a low level previously, but it does not support a finding of disability during that period. Mr. Meredith indicated the claimant was having problems with fatigue and tremors well before the date last insured. This is not supported by the claimant's complaints to his doctors. Clearly, there was a change in condition in 2008 that led the claimant to more aggressively seek medical treatment. Presumably, had he been that impaired prior to December 31, 2007, he would have sought such treatment then. In addition, the claimant not only admitted being in good health in September 2007 (Exhibit 4F, page 9), but he also told his doctor in July 2008 that up until that point, he had been capable of doing "odd jobs" for cash (Exhibit 4F, page 11). Therefore, the testimony of Robert Snowden and Mr. Meredith is not persuasive of disability prior to the date last insured, when compared with the rest of the evidence.

(AR 35).

"The testimony of lay witnesses. . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2004), citing *Lashley v. Secretary of Social Security*, 708 F.2d 1048, 1054 (6th Cir.1983). The ALJ could properly discount Rev. Meredith's testimony because it was not supported by the medical record. However, given that Dr. Sullivan's January 25, 2011 report was not part of the record at the time, the ALJ should re-visit Rev. Meredith's testimony. Accordingly, on remand, the Commissioner should re-evaluate Rev. Meredith's testimony in light of Dr. Sullivan's report.

### D. The ALJ committed reversible error by failing to ask the vocational expert accurate questions.

Plaintiff contends that the hypothetical question posed to the vocational expert (VE) did not account for the effects of his multiple sclerosis. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Here, the ALJ relied on the VE's answers to a hypothetical question which incorporated the RFC determination (AR 87). However, as discussed, the RFC determination was made without considering the evidence contained in Dr. Sullivan's January 25, 2011 report. Given this shortcoming, if the Commissioner finds on remand that Dr. Sullivan's report establishes the onset of muscular dystrophy prior to the date last insured, then the Commissioner should re-evaluate the vocational evidence at the fifth step of the sequential process consistent with such findings.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should evaluate Dr. Sullivan's January 25, 2011 report to determine if plaintiff suffered from

multiple sclerosis prior to his date last insured of December 31, 2007 and the extent of his symptoms at that time. In addition, the Commissioner should re-evaluate the testimony of Rev. Meredith and the vocational evidence in light of Dr. Sullivan's opinion. A judgment consistent with this opinion will be issued forthwith.

Dated:  March 19, 2014                                        /s/ Hugh W. Brenneman, Jr.
                                                              HUGH W. BRENNEMAN, JR.
                                                              United States Magistrate Judge